IN RE APPRAISAL OF CERTAIN FIRE LOSSES: RADEMAKER, D. B. A. RADEMAKER MOTOR SALES CO., APPELLANT, *v.* ATLAS ASSURANCE CO., LTD., ET AL., APPELLEES.

(No. 22932—Decided June 30, 1954.)

*Mr. George E. Rich* and *Mr. E. J. Chesney,* for appellant.

*Messrs. Arter, Hadden, Wyloff & VanDuzer,* for appellees.

SKEEL, J. This appeal comes to this court on questions of law from a judgment of the Common Pleas Court of Cuyahoga County, entered on the application of the appellees to confirm an award of appraisers appointed to appraise the amount of a fire loss. The motion to confirm the finding of the appraisers was filed under authority of Section 2711.09, Revised Code.

The appellant, Len Rademaker, was the owner of a garage building in Berea, Ohio, in which he conducted an automobile sales and repair business. The appellees each had contracts of insurance protecting the appellant against loss by fire damage to the building in the total sum of $56,000. On March 20, 1952, during the terms of the several fire insurance contracts, the building was damaged by fire and, thereafter, a claim for fire loss was filed with the insurance companies. The Western Adjustment Company was employed by the appellees to adjust the loss. After some negotiations which were not successful, the adjustor wrote a letter to Rademaker on May 26, 1952, enclosing an "agreement for submission to appraisers," stating that they were asking to employ this method of determining the loss, as provided by the policies of insurance, because other efforts had failed. The adjustor followed this request by a letter of June 30, 1952, requesting the return of the appraisal agreement properly executed. On July 24, through Rademaker's lawyers, the agreement for submission to appraisers was returned fully executed by the parties by which N. R. Wells and Howard Haag (the

latter being named by Rademaker) were employed to appraise the fire loss. They selected Joe McKeon as umpire, as provided in the appraisal agreement. On August 18, 1952, the appraisers, by their agreement and without the need of the concurrence of the umpire, returned the appraisal as follows:

"Sound value (of building) $68,000; loss and damage (by fire) $14,189.58; building (no allowance for steel girder replacement). If final inspection of the Herron Company requires the replacement of steel roof girders, add the sum of $325 each."

Rademaker refused to receive the amount found by the appraisers as the amount of the fire loss and on December 22, 1952, brought an action in Common Pleas Court to recover his actual loss and damages under his insurance contract, claiming damages as a result of the breach of the insurance contracts by these appellees in the sum of $67,000.

Thereafter, the appellees filed their motion on January 22, 1953, in an original proceeding, claiming the right to do so under Section 2711.09, Revised Code, praying that the court confirm the award and that judgment be rendered in conformity therewith.

Upon hearing, the court entered judgment in favor of the appellant against appellees in the total sum of the appraised value agreed upon by the appraisers, that is, in the sum of $14,189.58, the costs being adjudged against Rademaker. No interest was provided for and the amount of the award has not been tendered in court.

The appellant claims the following errors:

"1. The trail court erred herein in refusing the request of appellant herein for trial by jury.

"2. The trial court erred herein by denying the appellant the necessary time to present the evidence and witnesses necessary to support his allegations in

a trial room of the court rather than in court room No. 1, which is the 'emergency' room of said court.

"3. The trial court erred herein in denying the appellant's application to vacate alleged award.

"4. The trial court erred herein in granting the motion of the five insurance companies to confirm the so-called award made by so-called arbitrators.

"5. The trial court erred herein in denying the request of appellant to have an official court stenographer present at the entire hearing hereof.

"6. The trial court erred herein in overruling the appellant's motion for new trial.

"7. The trial court erred herein in overruling the various objections and motions taken herein by appellant.

"8. The trial court by its rulings and findings foreclosed the right of this appellant to have his full and proper day in court and to have his evidence and witnesses heard and seen both by the court and a jury."

The record discloses that in the appellant's opening statement he claimed that the appellees' adjustors delayed in carrying on negotiations so that he employed two competent appraisers who appraised the fire loss in the neighborhood of $37,000; that, thereafter, the appellees' adjustors offered to pay $23,500, which appellant refused; that it was then agreed the loss should be appraised as provided in the policy, with a minimum loss of $23,500; and that upon these conditions, the appellant signed the "agreement for submission to appraisers."

The evidence fails, however, to show what reports the appellant received from his independent appraisers, but it does disclose that the appellees' adjustors offered to settle the loss for $23,400 or $23,500, which, when refused, the agreement for submission to appraisers was requested. There is no evidence that

the appraisers were to be concerned with the amount of appellees' offer as a minimum loss figure.

There is no dispute that appellant signed the agreement for submission to appraisers, and that there is no minimum loss figure contained in the agreement. Just what the terms of the policies of insurance are with respect to such agreement is not disclosed by the record. The policies were not introduced into evidence. Whether such an agreement was to conclude the rights of the parties in determining the loss when a claim was made because of a fire is not shown in the record.

In the last paragraph of the agreement it is in part provided:

"* * * It is expressly understood and agreed that the sole purpose of this agreement and the appraisal herein provided for is to ascertain and fix the aforesaid amounts of the sound value and loss and damage of and to the property aforesaid, and this agreement and said appraisal shall not determine, waive, or in any wise affect any question of liability to first party, or any right of any subscriber of this agreement, except to fix the amounts of said sound value and loss and damage."

It is clear from the foregoing provision that there was no fixed obligation on the part of the appellees to pay the amount found by the appraisers as damages to appellant's property, because of the alleged fire. Unless, therefore, the insurance contracts, which are not in evidence, contained provisions binding the parties to abide the amount determined by the appraisers, there could be no legal obligation on the part of the appellant to be absolutely bound thereby.

This action was filed under what is now known as Chapter 2711, Revised Code, entitled "Arbitration." This chapter defines one of the special remedies provided for in Title XXVII [27].

Section 2711.01, Revised Code, in part, provides:

"A provision in any written contract, except as provided in division (A) of this section, to settle by arbitration a controversy thereafter arising out of such contract, or out of the refusal to perform the whole or any part thereof, or any agreement in writing between two or more persons to submit to arbitration any controversy existing between them at the time of the agreement to submit, shall be valid, irrevocable and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract * * *."

It is to be noted that this section provides for the arbitration of controversies arising out of a written agreement. There is no provision in this section dealing with an agreement to appraise a claimed loss.

Bouvier's Law Dictionary defines an arbitration as:

"The investigation and determination of a matter or matters of difference between contending parties, by one or more unofficial persons, chosen by the parties, and called arbitrators or referees."

The sections following the one just quoted in part, that is, Sections 2711.02 to 2711.08, inclusive, Revised Code, provide for staying a suit or proceeding brought upon an issue under an agreement in writing which is referable to arbitration, until such arbitration has been had, for the enforcement of an arbitration agreement, for the appointment of arbitrators by the court in certain cases, that applications shall be heard the same as is provided by law for hearing motions, except as otherwise provided; define the duties of arbitrators, including the subpoening of witnesses; grant the power to administer oaths or affirmations to witnesses; fix time for hearing; grant the power to take depositions, and the like; and provide that awards must be made in writing.

No such powers are conferred by law upon appraisers appointed under contract to determine the award of a fire loss.

Section 2711.09, Revised Code, which is the provision under which the appellees claim the right to this special proceeding, provides as follows:

"At any time within one year after an award in an arbitration proceeding is made, any party to the arbitration may apply to the Court of Common Pleas in the county within which such award was made for an order confirming the award. Thereupon the court shall grant such an order unless the award is vacated, modified, or corrected as prescribed in Sections 2711. 10 and 2711.11 of the Revised Code. Notice in writing of the application shall be served upon the adverse party or his attorney five days before the hearing thereof."

The right to seek an order confirming an award deals with an award of an arbitrator or arbitrators acting within the provisions and under the powers conferred by this section. This section does not include within its provisions the right to confirm the findings of appraisers.

The Supreme Court in the case of *Royal Ins. Co.* v. *Ries*, 80 Ohio St., 272, 88 N. E., 638, held in the second paragraph of the syllabus:

"2. The provision in a standard fire insurance policy that 'in the event of disagreement as to the amount of loss the same shall, as above provided, be ascertained by two competent and distinterested appraisers, the insured and this company each selecting one, and the two so chosen shall first select a competent and disinterested umpire; the appraisers together shall then estimate and appraise the loss, stating separately sound value and damage, and, failing to agree, shall submit their differences to the umpire; and the award in writing of any two shall determine the

amount of such loss; the parties thereto shall pay the appraiser respectively selected by them and shall bear equally all expenses of the appraiser and umpire,' is a provision for an appraisement and not for an arbitration, and such submission is not to be judged by the strict rules applicable to arbit ation and award, and where the appraisers and umpire have before them a list of the property destroyed, and the insured's statement in detail in respect to his loss, it is not ground for setting aside the appraisement that they refuse to hear evidence.''

In the opinion, on page 283, the court said:

''The distinction between an agreement for appraisement and an agreement to submit to arbitration may not always be plain. But when the question of the liability of the company under the policy, and every other question is reserved, and the only submission provided for is an appraisal of the property at and after the time of the fire to determine the single question of the amount of the loss, it would seem to be an agreement for an appraisement and not an arbitration. In *Fleming* v. *Phoenix Assurance Company of London,* 75 Hun, 530, where the policy contained an identical provision, Dykman, J., says: 'They are appraisers and not arbitrators. Their function is to estimate and appraise the loss by personal examination and observation. They have no power or authority to take testimony, and their doing so is not contemplated.' We think this must have been what the parties contemplated, and if it was intended that the single question of the amount of the loss should be determined by an arbitration, and not by appraisal by appraisers, that the agreement should have so provided.''

In the case of *Saba* v. *Homeland Ins. Co. of America,* 159 Ohio St., 237, 112 N. E. (2d), 1, the Supreme Court only held that, under a contract for the appoint-

ment of appraisers in case of disagreement of loss under a fire insurance policy, the policy of the state, exemplified in a sense by the chapter on arbitration, is that a court of record is vested with power to appoint an umpire when the insurer refuses to appoint an appraiser under the policy agreement. The court did not hold that said chapter dealing with arbitration (Chapter 2711, Revised Code) was applicab.e to or provided the procedure for confirming by judgment upon motion the report of appraisers under appraisal agreements. And in the dissenting opinion by Hart, J., at page 251, he says:

"In Ohio, as well as in many other states, there exists an arbitration act or arbitration code which gives some court of general jurisdiction authority to require compulsory performance of a *pure arbitration agreement as distinguished from an appraisal.* In this state, a written contract *to arbitrate,* with certain exceptions, may be enforced by compulsory orders of *the Common Pleas Court* having jurisdiction over a party failing to perform the agreement, and such court *may require him to* appoint his appraiser in accordance with the procedure provided in the contract, if so provided, or otherwise if not so provided, and the court may then confirm, modify, or vacate the award of the arbitrators when made, and enter judgment thereon. See Sections 12148-1 to 12148-16, inclusive, General Code. Although there is a similar statute in at least one state relating to 'appraisals' (See *Glidden Co.* v. *Retail Hardware Mut. Fire Ins. Co.,* 181 Minn., 518, 233 N. W., 310, 77 A. L. R., 616, affirmed, 284 U. S., 151, 76 L. Ed., 214, 52 S. Ct., 65), there is no such statute in Ohio, and in my opinion this arbitration act can have no application here. The writer of this dissent has made search of the authorities on this subject and is unable to find any case in which the procedure adopted in this case, namely, the

appointment of an umpire before the two appraisers were appointed, has been attempted or remotely followed.''

We must conclude, therefore, that there is no provision of law in Ohio, statutory or otherwise, whereby in a special proceeding without summons or pleadings, the Common Pleas Court can be called upon to confirm the amount of a fire loss and enter judgment therefor, based on the finding of appraisers appointed by agreement to determine the amount of the loss. If the legality or conclusions of the appraisal here being considered are to be the subject of judicial proceedings they must be presented in a case wherein the issus are presented by pleadings as provided by law. In such case issues may be presented upon which a jury trial could be demanded. The court in this proceeding was without jurisdiction to enter a judgment on motion for confirmation of the amount agreed upon by appraisers under the provisions of Section 2711.09, Revised Code.

Whether fraud can be established by virtue of the wide discrepancy between the offer to settle the claim of $23,500 and the finding of the appraisers that the total loss was only $14,189.58, or that the award was so far from the real loss as to establish an abuse of discretion or lack of honesty of purpose or fairness in dealing with the powers conferred upon the appraisers by the contending parties need not be considered here, although such claim is not without merit. We are here concerned only with the power of the court to enter judgment on the motion.

For the foregoing reasons, the judgment of the trial court is reversed and final judgment is entered for the appellant.

*Judgment reversed.*

HURD, P. J., and KOVACHY, J., concur.